ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **HONYADI MEDINA SANTIAGO**<br><br>**Recurrente**<br><br>v.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN**<br><br>Recurrido | TA2026RA00104 | **REVISIÓN** procedente del **Departamento de Corrección y Rehabilitación**<br><br>Remedio Administrativo Núm: **ICG-131-2026** |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de marzo de 2026.

Comparece ante nos el señor Honyadi Medina Santiago (Sr. Medina Santiago), por derecho propio e *in forma pauperis*,[1] mediante un recurso de revisión judicial, y nos solicita que revoquemos una decisión llevada a cabo por el Departamento de Corrección y Rehabilitación (DCR) el 9 de diciembre de 2024.[2] Por medio de esta, la agencia administrativa determinó cancelar permanentemente las visitas de su pareja consensual, la señora Natasha Rodríguez Lucena (Sra. Rodríguez Lucena).

Por los fundamentos que expondremos a continuación, confirmamos la *Respuesta al miembro de la población correccional* emitida por el DCR el 20 de febrero de 2026.[3]

**I.**

El presente caso tiene su génesis el 2 de mayo de 2024 cuando el DCR emitió una *Respuesta del área concernida/superintendente*.[4]

---

[1] Por medio de esta *Sentencia*, autorizamos la comparecencia del Sr. Medina Santiago *in forma pauperis*.
[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones, Entrada Núm. 1, Apéndice 3, Anejo III.
[3] *Íd.*, Apéndice 2, Anejo I.
[4] *Íd.*, Apéndice 3, Anejo II.

Dicha agencia administrativa reiteró los detalles de una orientación que brindó al Sr. Medina Santiago sobre un incidente que ocurrió en la Institución Guerrero en Aguadilla. Específicamente, el DCR adujo que el 23 de febrero de 2024, a las 11:00am, el Oficial Frankie Pérez Laguerre realizó un informe disciplinario con número de *Querella* 316-24-039 sobre el Sr. Medina Santiago en concepto de comisión de nuevo delito, agresión simple, abuso o mal uso de privilegios, y la comisión de un delito de gravedad menor. Como consecuencia de ello, trasladó al Sr. Medina Santiago a la Institución Correccional Ponce Adultos 1000. Además, llevó a cabo una investigación y, posteriormente, se celebró una vista disciplinaria ante la Examinadora Madeline Morales Santiago el 29 de febrero de 2024, quien emitió una resolución donde "***[a]probó la Regla 37 e INCURSO 'CULPABLE' de la Querella y con determinación de Suspensión de los Privilegios de Vis[i]ta y Comisaria por 30 días***".[5] (Énfasis en el original).

Ulteriormente, el 16 de junio de 2025, el Sr. Medina Santiago presentó una *Solicitud de remedio administrativo*.[6] Adujo que le negaron apuntar en el expediente de visitas a su pareja consensual, y no existía motivo razonable para que intervinieran con él. Consecuentemente, suplicó que se tomaran cartas sobre el asunto.

El 3 de julio de 2025, el DCR emitió una *Respuesta del área concernida/superintendente*.[7] Expuso que las determinaciones que realizó se debieron a múltiples incidentes en los que estuvo envuelto el Sr. Medina Santiago, más las visitas de los miembros de la población correccional constituían un privilegio y no un derecho. Particularmente, arguyó que existía un informe sobre un incidente que ocurrió el 23 de febrero de 2024, donde el Sr. Medina Santiago

---

[5] *Íd.*
[6] *Íd.*, Anejo III.
[7] *Íd.*

haló el cabello de su pareja consensual, la Sra. Rodríguez Lucena, y, como resultado de ello, se radicó una querella administrativa contra el Sr. Medina Santiago; lo reclasificó a custodia máxima el 20 de marzo de 2024; y el 9 de diciembre de 2024, canceló permanentemente las visitas de la Sra. Rodríguez Lucena. La agencia administrativa también expuso que existía otra cancelación permanente del 19 de septiembre de 2024 con relación a su pareja anterior, la señora Katherine Santiago Arce, quien introdujo contrabando en una de las visitas; específicamente, dos celulares y un aditamento de manos libres. Por lo último, el DCR sostuvo que orientó al Sr. Medina Santiago el 21 de enero de 2025 al respecto.

El 3 de febrero de 2026, el Sr. Medina Santiago presentó una *Solicitud de remedio administrativo* en la que brindó su versión sobre lo acontecido el 23 de febrero de 2024.[8] Sostuvo que ese día se encontraba con su esposa, la Sra. Rodríguez Lucena, y, en un momento, acarició su pelo. Sin embargo, según el Sr. Medina Santiago, los oficiales de turno, el Oficial Frankie Pérez Laguerre y el Oficial Rodríguez, se acercaron para dejarle saber que su visita había culminado por haberle halado el cabello a la Sra. Rodríguez Lucena. Ante ello, tanto él como la Sra. Rodríguez Lucena aclararon que habían malinterpretado la situación, empero, aun así, su visita fue suspendida, y, ese mismo día, lo trasladaron a Ponce 1000.

El 20 de febrero de 2026, no obstante, el DCR emitió la *Respuesta al miembro de la población correccional*.[9] Por medio de esta, la agencia administrativa desestimó la solicitud de remedios administrativos del Sr. Medina Santiago, conforme a la Regla XIII(5)(c) y la Regla XII(2) del Reglamento Núm. 8583-2015, *supra*.

Aunque no presentó una solicitud de reconsideración ante el DCR, el Sr. Medina Santiago radicó un recurso de revisión judicial

---

[8] *Íd.*, Anejo I.
[9] *Íd.*, Apéndice 2, Anejo I.

ante nos el 12 de marzo de 2026 por el que señaló a la agencia administrativa por la comisión de los siguientes errores:

**PRIMER ERROR: ERRÓ EL OFICIAL AL NO DARME LA OPORTUNIDAD DE DEFENDERME ANTE UN JUEZ EXAMINADOR Y TRA[S]LADARME EL MISMO DÍA A OTRA INSTITUCIÓN. ANEJO II[.]**

**SEGUNDO ERROR: ERRÓ EL TENT. MAXIMONO EN NO VERIFICAR LOS V[Í]DEOS DE VIGILANCIA EL MISMO DÍA Y ANTES DE EL [SIC] TRASLADO. ANEJO II[.]**

**TERCER ERROR: ERRÓ EL DCR AL SUSPENDERME LA VISITA PERMANENTEMENT[E] CUANDO YA EL JUEZ EXAMINADO[R] ME SUSPENDIÓ LA VISITA SOLO POR 30 D[Í]AS[.] ANEJO II[.]**

**CUARTO ERROR: ERRÓ LA SRA. SILKIA FIGUEROA SIERRA JEFA DE PROGRAMAS Y SERVICIOS AL USA[R] UN INFORME VIEJO EN EL CUAL UN JUEZ DE EL [SIC] TRIBUNAL DE BAYAMÓN ME ENCONTR[Ó] INOCENTE Y DECESTIMO [SIC] LOS CARGOS. ANEJO II[;] IV ANEJO[.]**

**QUINTO ERROR: ERRÓ LA SEÑORA, [SIC] DAISY MEL[É]NDEZ MONTES SUPERVISORA DE LA REGIÓN DE NORTE DE PROGRAMA[S] Y SERVICIOS AL ESTAR DE MUTUO ACUERDO CON LA SRA. SILKIA FIGUEROA Y LA SOCIO PENAL WILMARY CARO EN SUSPENDER LA VISITA DE MI C[Ó]NYUGE PERMANENTEMENTE SIN PRUE[B]AS SUSTANCIALES YA QUE NUNCA PRESENTARON LA PRUEBA AL JUEZ EXAMINADOR '(V[Í]DEOS DE VIGILANCIA)'[.] ANEJO II[;] IV ANEJO[.]**

**SEXTO ERROR: ERRÓ EL DCR AL NO DESCUBRIR LA PRUEBA SUSTANCIAL O MATERIAL VISIBLE DE LAS C[Á]MARAS DE VIGILANCIA Y AL ABUSAR DE SU AUTORIDAD PARA DE UN MODO CAUSAR DAÑO AL PLAN INSTITUCIONAL DEL PETICIONARIO CREANDO INFORMES NEGATIVOS EN EL EXPEDIENTE DE[L] SR. MEDINA SANTIAGO. ANEJO II[.]**

Después de examinar con detenimiento el recurso de epígrafe, optamos por prescindir de los términos, escritos o procedimientos ulteriores "con el propósito de lograr su más justo y eficiente despacho". Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

## II.

### A.

El Artículo 4.006 (c) de la *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*, Ley Núm. 201 del 22 de agosto de 2003, según enmendada, 4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. En el ejercicio de su facultad, los tribunales apelativos están obligados a concederles deferencia a las decisiones administrativas, pues estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que se les han delegado a las agencias. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33; *Torres Rivera v. Policía de PR*, 196 DPR 606, 627 (2016). De este modo, todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que la parte que las impugne debe producir suficiente evidencia para derrotarla. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 393-394 (2012).

Cónsono con lo anterior, al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad respecto a las actuaciones de la agencia. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 115 (2023). Al aplicar este criterio, los foros revisores deben resolver si la determinación de la agencia, en la interpretación de los reglamentos y las leyes, es razonable, empero no si la decisión es la más razonable o la mejor. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006). Es decir, la revisión judicial procede si la agencia administrativa actuó arbitraria o ilegalmente, o de una forma tan irrazonable que en su actuación abusó de su discreción. *Rolón Martínez v. Caldero López,*

201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR, supra,* pág. 626. De igual modo, al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas, supra,* págs. 114-115. La evidencia sustancial es " 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión' ". *Empresas Ferrer v. A.R.Pe.,* 172 DPR 254, 266 (2007) (*citando a Hernández, Álvarez v. Centro Unido, supra,* pág. 615). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota,* 163 DPR 716, 728 (2005).

Por otro lado, y por lo general, las agencias son las primeras intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Estado Libre Asociado de Puerto Rico,* 2024 TSPR 130. Sin embargo, los tribunales son el ente con el poder de interpretar las leyes y la constitución. *OEG v. Rodríguez y otros,* 159 DPR 98, 124 (2003). Cónsono con lo anterior, el Artículo 4.5 de la *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico",* Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal". Así, la interpretación de la agencia administrativa "no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública". *Otero Rivera v. Bella Retail Group, Inc.,* 214 DPR 473, 485 (2024) (Énfasis suplido en el original eliminado).

**B.**

Por medio del *"Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011",* Plan de Reorganización Núm.

2 del 21 de noviembre de 2011, según enmendado, 3 LPRA, Ap. XVIII, Art. 4, se creó el DCR como el organismo "responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y menores, así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país". En particular, el DCR aprobó el Reglamento Núm. 8583-2015, *supra*, págs. 1-2, en virtud de que "toda persona recluida en una institución correccional disponga de un organismo administrativo, en primera instancia, ante el cual pueda presentar una solicitud de remedio, para su atención, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal y para evitar o reducir la radicación de pleitos en los Tribunales de Justicia". *Muñoz Barrientos v. Estado Libre Asociado de Puerto Rico*, 212 DPR 714, 729 (2023). Así, el DCR tiene jurisdicción para atender las solicitudes de remedios de los confinados que estén relacionada a "a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional[;] b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento[;] Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la 'Suspensión de Privilegios por Razones de Seguridad'[;] Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme a 'Prison Rape Elimination ACT' (PREA) (115.51ª, d, 115.52-b1, b2, b3)". Regla VI del Reglamento Núm. 8583-2015, *supra*, págs. 13-14.

## III.

En el caso de marras, el Sr. Medina Santiago solicitó la revocación de la determinación realizada por el DCR el 9 de diciembre de 2024 en la que determinó cancelar permanentemente

las visitas de la Sra. Rodríguez Lucena. Particularmente, sostuvo que la agencia administrativa incidió al no brindarle oportunidad de defenderse ante un juez examinador; al trasladarlo a otra institución; al no verificar los vídeos de vigilancia previo al traslado; al suspenderle permanentemente la visita en cuestión; al utilizar un informe viejo en el que el Tribunal de Primera Instancia lo encontró inocente y desestimó los cargos radicados en su contra; y al abusar de su autoridad creando informes negativos en su expediente.

A juicio del DCR, procedía la desestimación de la *Solicitud de remedio administrativo* presentada por el Sr. Medina Santiago el 3 de febrero de 2026, conforme a la Regla XIII(5)(c) y la Regla XII(2) del Reglamento Núm. 8583-2015, *supra*.

Es meritorio mencionar que, como parte del procedimiento para la radicación de solicitudes, "[e]l miembro de la población correccional tendrá quince (15) días calendario, contados a partir de advenir en conocimiento de los hechos que motivan su solicitud para radicar la misma, salvo que medie causa o caso fortuito que le impida realizarla". Regla XII(2) del Reglamento Núm. 8583-2015, *supra*, págs. 24-25. A esos efectos, el evaluador tiene la facultad de desestimar una solicitud cuando se radica fuera del término establecido. Regla XIII(5)(c) del Reglamento Núm. 8583-2015, *supra*, págs. 28-29.

En el presente caso, el DCR arguyó que, el 23 de febrero de 2024 en la Institución Guerrero en Aguadilla, el Sr. Medina Santiago haló el cabello de la Sra. Rodríguez Lucena y, como resultado de ello, se radicó una querella administrativa contra él; lo reclasificó a custodia máxima; y canceló permanentemente las visitas de la Sra. Rodríguez Lucena. Por su parte, el Sr. Medina Santiago adujo que, ese mismo día, los oficiales de turno malinterpretaron lo ocurrido, pues, sostuvo que acarició el pelo de la Sra. Rodríguez Lucena.

Sin embargo, el Sr. Medina Santiago presentó una *Solicitud de remedio administrativo* sobre el antedicho suceso el 3 de febrero de 2026; es decir, **dos (2) años después** del incidente. Ciertamente, el Sr. Medina Santiago radicó dicha solicitud administrativa en exceso de los quince (15) días, contados a partir de advenir en conocimiento de los hechos que motivaron su solicitud. Regla XII(2) del Reglamento Núm. 8583-2015, *supra,* págs. 24-25. Por tanto, al amparo de la Regla XIII(5)(c) del Reglamento Núm. 8583-2015, *supra,* págs. 28-29, el DCR tenía la facultad para desestimar dicha petición por tardía. En otras palabras, la determinación sobre la cancelación de las visitas de la Sra. Rodríguez Lucena y lo relacionado a dicha decisión, advino final y firme. Por tal razón, el DCR no incidió en los señalamientos de error.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Respuesta al miembro de la población correccional* emitida por el DCR el 20 de febrero de 2026.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones